# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| CLAUDIE ALLEN, | : | |
| Plaintiff, | : | |
| vs. | : | CA 17-0434-MU |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability, disability insurance benefits, and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 20 & 23 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, and the Commissioner's brief,[1] it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[2]

---

[1] The parties in this case waived oral argument. (*See* Docs. 21-22.)

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 20 & 23 ("An appeal from a
(Continued)

## I. Procedural Background

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on or about August 28, 2014, alleging disability beginning on October 10, 2012. (*See, e.g.,* Tr. 286-93.) Allen's claims were initially denied on October 27, 2014 (Tr. 161-62 & 187-98) and, following Plaintiff's December 8, 2014 written request for a hearing before an Administrative Law Judge ("ALJ") (*see* Tr. 199-200), a hearing was conducted before an ALJ on February 10, 2016 (Tr. 60-98). On July 28, 2016, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to a period of disability, disability insurance benefits, or supplemental security income. (Tr. 41-54.) More specifically, the ALJ proceeded to the fifth step of the five-step sequential evaluation process and determined that Allen retains the residual functional capacity to perform those light jobs identified by the vocational expert ("VE") during the administrative hearing (*compare id.* at 52-53 *with* Tr. 93-95). Sometime thereafter, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council; the Appeals Council denied Allen's request for review on August 8, 2017 (Tr. 1-3). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to obesity, status-post surgical repair of the tibia, right knee chondromalacia, history of deep vein thrombosis, headaches, hypertension,

judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

esophageal reflux, obstructive sleep apnea, and major depressive disorder. The Administrative Law Judge (ALJ) made the following relevant findings:

> **3. The claimant has the following severe combination of impairments: obesity with gross noncompliance and without physical or mental obstacle to compliance; status-post surgical repair of tibia with history of gross noncompliance; mild irregularity of the medial meniscus without tear and chondromalacia of the patella, right knee; history of deep vein thrombosis, secondary to lower extremity surgery; history of headaches of unclear etiology; hypertension; insignificant thickening of the bilateral carotid arteries; esophageal reflux; and obstructive sleep apnea (20 CFR 404.1520(c) and 416.920(c)).**
>
> . . .
>
> **4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> . . .
>
> **5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant cannot climb ropes, poles, scaffold[s] or ladders. The claimant can occasionally climb ramps and stairs. The claimant can sit at least six hours over the course of an eight-hour workday. The claimant can stand and/or walk at least two hours over the course of an eight-hour workday. The claimant can frequently balance and stoop. The claimant can occasionally kneel and crouch. The claimant cannot crawl. The claimant can occasionally work in humidity, wetness and extreme temperatures. The claimant can occasionally work in dusts, gases, odors and fumes. The claimant cannot work in poorly ventilated areas. The claimant cannot work at unprotected heights. The claimant can occasionally work with operating hazardous machinery. The claimant can occasionally operate motorized vehicles.**
>
> . . .

**6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

. . .

**7.     The claimant was born on September 1, 1985, and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

. . .

**11.    The claimant has not been under a disability, as defined in the Social Security Act, from October 10, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 43, 45, 45-46, 52 & 53 (emphasis in original)).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to her past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform light work existing in significant numbers in the national economy, is supported by substantial evidence.

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Allen asserts four reasons the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ erred in finding she has no severe impairments, but instead a severe combination of impairments, only to later characterize some of those non-severe impairments as severe; (2) the ALJ erred in failing to satisfy SSR 02-01p, which directs the ALJ to make certain findings involving obesity, findings not made here; (3) the ALJ erred in rejecting the opinion of every medical professional in the record, whether non-examining, reviewing DDS physicians, examining physicians or treating physicians; and (4) the

---

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

Appeals Council erred in failing to remand this case for consideration of the treating physician's opinion. Because the Court finds that the ALJ erred to reversal in finding Plaintiff's major depressive disorder to be a non-severe impairment and in failing to consider the impact of this impairment on Plaintiff's ability to perform the mental requirements of light work, the Court has no reason to address Allen's other assignments of error. *See Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

A severe impairment is an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *See, e.g.,* 20 C.F.R. § 404.1520(c). The Commissioner's regulations define basic work activities as the abilities and aptitudes to do most jobs and in analyzing step two of the sequential evaluation process, the Commissioner considers a claimant's "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1522(b). "Step two is a threshold inquiry." *McDaniel v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986). Only claims based on the most trivial impairments may be rejected, and an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work. *Id.* A claimant need only demonstrate that her impairment is not so slight and its effect not so minimal. *Id.*

When evaluating whether a claimant suffers from a severe mental impairment, the Commissioner considers how the impairment impacts the following four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace;[5] and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). Where the degree of limitation is rated as "none" or "mild" in the first three functional areas, and as "none" in the fourth functional area, the Commissioner will generally conclude that the claimant does not suffer from a severe mental impairment. 20 C.F.R. § 404.1520a(d)(1).

In this case, the ALJ concluded that Allen's major depressive disorder was non-severe after finding that there were no functional limitations in the first three functional areas and that there were no episodes of decompensation. (Tr. 44-45.)[6] In particular, the ALJ's conclusion that Allen had no limitation in social functioning or in the area of concentration, persistence, and pace hinges solely upon Plaintiff's one report to a mental health provider on August 12, 2015 that she had started selling Avon products "'to keep herself busy . . . .'" (Tr. 44; *see also* Tr. 45.)[7] The ALJ's finding in this regard is

---

[5] "Concentration, persistence, or pace refers to the claimant's ability to sustain focused attention and concentration sufficiently long enough to permit h[er] to timely and appropriately complete tasks that are commonly found in work settings." *Jacobs v. Commissioner of Social Security,* 520 Fed.Appx. 948, 950 (11th Cir. Jun. 6, 2013) (citation omitted).

[6] The undersigned finds it internally inconsistent for the ALJ to in the "same breath" conclude that Allen has no restrictions in activities of daily living but at the same time conclude that "[w]hile [her] impairments may interfere with complex activities, the claimant's performance of a simple routine is appropriate, effective, and sustainable." (Tr. 44.) If a person has absolutely no restrictions in activities of daily living, one would expect that she could perform both simple and complex activities.

[7] The ALJ also appears to try to bolster his finding regarding concentration, persistence, and pace by noting Plaintiff's completion of high school and one year of college and her completion of a certification to become a Certified Nurse's Assistant (CNA) (Tr. 44), (Continued)

the epitome of cherry-picking because it ignores all other mental health evidence and reports of record which indicate that Allen would have limitations with respect to social functioning and concentration, persistence and pace, specifically, for example, the GAF

---

curiously concluding that "[t]he record does not indicate a mental impairment or combination of all impairments that would prevent the claimant from mentally performing her past work or other mental work activity." (*Id.*) This Court is unpersuaded by the ALJ's reasoning in this regard, however, because the record is clear that Allen finished high school in 2004 (Tr. 67), her one year of college in 2005 (Tr. 68), and her CNA training was apparently completed sometime between 2006 and 2009 (*see* Tr. 333 (reflecting Plaintiff worked at West Alabama Mental Health from March of 2006 through July 2009 and at Partlow from 2009 through September of 2010)), all of which occurred, at the very least, one and one-half years before Allen was first diagnosed with major depressive disorder (*see, e.g.,* Tr. 814), more than three years before Allen's alleged disability onset date of October 10, 2012 (*see* Tr. 53), and more than five years prior to a reviewing mental health professional indicating that Allen had difficulties in maintaining concentration, persistence, and pace because of her mental impairment (*see, e.g.,* Tr. 151). Accordingly, what Allen was mentally capable of doing years before she was diagnosed with major depressive disorder simply has no direct import with respect to whether Plaintiff had limitations in concentration, persistence and pace, and consequently a severe mental impairment, on or after her alleged onset disability date of October 10, 2014, and certainly not on October 27, 2014, when the reviewing physician, Dr. Robert Estock, completed a Psychiatric Review Technique indicating that Allen suffers from a severe affective disorder on account of moderate difficulties in maintaining concentration, persistence, and pace (*see, e.g.,* Tr. 151; *see also id.* (Estock also indicated that Allen has moderate restriction of activities of daily activity and moderate difficulties in maintaining social functioning)) and thereafter, completed a "necessary" mental RFC assessment (*see, e.g.,* Tr. 141 (RFC assessment concluded that has sustained concentration and persistence limitations in that her ability to carry out detailed instructions is moderately limited; her ability to work in coordination with or in proximity to others without being distracted by them is moderately limited; and her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods is moderately limited); *compare id. with* Tr. 142 ("The claimant can understand, remember, and complete simple tasks. Concentration for detailed tasks would be limited at times by emotional factors. The claimant can maintain attention sufficiently to complete simple, 1-to-2-step tasks for periods of at least 2 hours, without the need for special supervision or extra work breaks.")). Although the ALJ accorded "no" weight to Dr. Estock's opinions relative to the step two inquiry (*see* Tr. 51), as explained in this footnote, his reliance on Allen's completion of a CNA certificate more than three years before Plaintiff's disability onset date cannot serve as any evidence (much less substantial evidence) that Plaintiff can sustain the focused attention and concentration necessary to permit the timely and appropriate completion of work tasks.

9

scores of 55 to 60 (*see* Tr. 636 & 858),[8] Allen's September 2014 report that she had been doing "nothing" (Tr. 946), her consistent reports in November and December of 2014 that she is not interested in "anything" (Tr. 936 & 938), her reported embarrassment in February 2015 when her leg "locked up" at the gym (Tr. 985), her April 2015 notation of inactivity (Tr. 979), her June 2015 report of "doing nothing" (Tr. 974), her continued isolative behavior in July of 2015 (Tr. 967), her September 15, 2015 report that she is involved in no activities beyond helping her elementary-aged daughter with homework (Tr. 1051), her November 2015 report that she is "scared" to exercise (Tr. 1018-19), her January 2016 report of continued struggles with depressive symptoms (Tr. 1000), and her hearing testimony that her depression impacts her ability to focus (Tr. 71) and that she hates to go out in public because people stare at her and laugh at her (Tr. 80).[9] And while it is true that an ALJ is not required to review every piece of medical evidence in the record, *see, e.g., Mitchell v. Commissioner, Social Security Admin.,* 771 F.3d 780, 782 (11th Cir. 2014), it is equally true that an ALJ's decision "must provide enough detail to ensure the Court that the ALJ actually received and considered the evidence in the record and made a decision based on the entire record." *Lemire v. Commissioner of Social Security,* 2015 WL 4887682, *6 (M.D. Fla. Aug. 17, 2015), citing *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005). Here, the

---

[8] *See* http://www.rattler-firebird.org/va/gafchart.php (reflecting that GAF scores of 51-60 indicate moderate symptoms and moderate difficulty in social, occupational, or school functioning).

[9] Plaintiff's testimony regarding her hatred with going out in public is particularly poignant and serves to underscore how and why a 5'7" 480-pound woman (*compare* Tr. 75 (Plaintiff's hearing testimony) *with* Tr. 50 ("The record supports that the claimant's height is 5'7" and her weight is 476 pounds. The undersigned takes administrative notice that this yields a Body Mass Index of 74.6 and is classified as morbid obesity.")) would be clinically depressed.

ALJ failed to make any mention of mental health treatment records (some examples of which have been set forth above) which support Plaintiff's testimony and/or corroborate Dr. Estock's step 2 findings; indeed, the ALJ failed even to summarize the hundreds of pages of mental health treatment documents in the record (*compare* Tr. 44 (mention of only two pages of medical evidence) & Tr. 51 (bare mention of Estock's opinions and the same evidence as previously referenced) *with* Tr. 577-859, 933-986 & 1000-1058 (the approximately 400 pages of mental health treatment records contained in the administrative transcript)) and, instead, improperly cherry-picked from these records one or two pages of evidence to support his determination that Plaintiff's major depressive disorder is not a severe impairment. *See Lemire, supra.*

In light of the foregoing, it is impossible for this Court to find that substantial evidence supports the ALJ's step two finding that Allen's major depressive disorder is not severe, inasmuch as the vast majority of medical evidence of evidence related to Plaintiff's disorder was ignored by the ALJ and arguably demonstrates that her mental impairment, at the very least, causes her difficulties in social functioning and in maintaining concentration, persistence and pace. *See Delia v. Commissioner of Social Security,* 433 Fed.Appx. 885, 887 (11th Cir. Jul. 14, 2011) ("Substantial evidence does not support the ALJ's finding, at step two, that Delia's mental impairments were not severe because the medical evidence showed that these impairments did cause restrictions in daily living, social functioning, and maintaining concentration, persistence, or pace."). However, provided the ALJ finds at least one severe impairment, *see Tuggerson-Brown v. Commissioner of Social Security,* 572 Fed.Appx. 949, 951 (11th Cir. Jul. 24, 2014) ("[W]e have recognized that step two requires only a finding of 'at

11

least one' severe impairment to continue to the later steps."),[10] and gives "full consideration to the consequences of [the claimant's] mental impairments on [her] ability to work at later stages of the analysis,[11] [any] error at step two [i]s harmless and is not cause for reversal." *Delia, supra,* 433 Fed.Appx. at 887 (citation omitted; footnote added). Here, of course, is where the ALJ committed reversible error inasmuch as the ALJ did not give full consideration to the consequences of Allen's major depressive disorder on her ability to work at later stages of the analysis.

In reaching his RFC determination, at step five, it is clear that the ALJ in this case gave no consideration to the consequences of Allen's major depressive on her ability to work inasmuch as neither that assessment (*see* Tr. 45-46), nor the hypothetical posed

---

[10] The ALJ did that in this case. (*See* Tr. 43.)

[11] "At steps three, four, and five, the ALJ considers the claimant's entire medical condition, including impairments that are not severe at step two." *Delia,* 433 Fed.Appx. at 887, citing *Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987); *see also Tuggerson-Brown, supra,* 572 Fed.Appx. at 951 ("While the ALJ did not need to determine whether every alleged impairment was 'severe,' he was required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation [process]."); *Sanchez v. Commissioner of Social Security,* 507 Fed.Appx. 855, 858 (11th Cir. Feb. 8, 2013) ("Before reaching step four, the ALJ must assess the claimant's RFC—which is the most work the claimant can do despite her physical and mental limitations—by considering all of the relevant medical and medically determinable impairments, including any such impairments that are not 'severe.' In assessing the RFC, the ALJ must consider the claimant's ability to meet the physical, *mental*, sensory, and other requirements of work." (citations omitted; emphasis supplied)). Here, of course, the ALJ gave no consideration to Plaintiff's major depressive disorder at step five (other than his perfunctory dismissal of certain findings by Dr. Estock relative to the step 2 inquiry) and, indeed, does not so much as summarize the four hundred pages of mental health treatment records in the administrative record (*see* Tr. 46-52). This was error.

Although this Court's focus is on step 5, it bears noting that the ALJ failed to consider Allen's mental impairments at step 3 (*see* Tr. 45 (no mention of Allen's mental impairments or any mental listings, such as 12.04)), though this is required, *Delia, supra,* 433 Fed.Appx. at 887 ("At steps three, four, and five, the ALJ considers the claimant's entire medical condition, including impairments that are not severe. . . . The ALJ considered Delia's mental impairments at steps three, four and five."). This error simply constitutes an additional basis why this action need be remanded for further consideration

to the vocational expert (*see* Tr. 93-94) upon which the ALJ relied to find Allen not disabled (*compare id. with* Tr. 45-46 & 52-53), contain mental functional limitations found in the record (*compare* Tr. 45-46 *with, e.g.,* Tr. 140-42 (indicating Allen's ability to carry out detailed instructions moderately limited, as is her ability to work in coordination with or in proximity to others without being distracted by them and her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; her ability to interact appropriately with the general public is moderately limited; and her ability to respond appropriately to changes in the work setting is moderately limited)) and supported by the mental health treatment evidence of record (*see* Tr. 577-859, 933-986 & 1000-1058), the vast majority of which the ALJ totally ignored. And while the ALJ gave no weight to the opinions of Dr. Estock that Allen "has moderate limitations in activities of daily living; moderate limitations in social functioning; and moderate limitations in concentration, persistence, and pace" (Tr. 51), for the same reason identified above, the undersigned cannot find this determination supported by substantial evidence, because the ALJ improperly cherry-picked one or two pages of mental health progress notes to support this finding, while totally ignoring the additional approximately 400 pages of mental health records in the administrative record, many of which corroborate Dr. Estock's step 2 findings.[12] In addition, and more importantly, the Court would simply point out that at the fifth step of the sequential

---

[12] In addition, "hinging" the rejection of Dr. Estock's step 2 findings on a report produced almost ten (10) months **after** the non-examiner's review of mental health records of record is unwarranted because it "says" nothing about the evidence Dr. Estock actually reviewed.

evaluation process what becomes most crucial is a non-examiner's (or examiner's) RFC assessment (*see, e.g.,* Tr. 140-42), as referenced above, and since the ALJ nowhere explicitly "rejects" Dr. Estock's RFC findings/functional limitations, he has accepted those functional limitations as true and this case need be remanded to the Commissioner to correct the ALJ's obvious omission in performing a proper step five analysis. Stated somewhat differently, this cause is due to be remanded to the Commissioner for further consideration, particularly since "the Commissioner's policy *requires* ALJs to be more detailed in evaluating a claimant's RFC at step four [and five] than in assessing the severity of mental impairments at steps two and three[,]" *Hines-Sharp v. Commissioner of Social Security,* 511 Fed.Appx. 913, 916 (11th Cir. Mar. 6, 2013), citing *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1180 (11th Cir. 2011); *see also Sanchez, supra,* 507 Fed.Appx. at 859 (affirming fifth-step denial of benefits where the ALJ's RFC assessment and hypothetical questions to the VE accounted for all of the claimant's mental limitations, including any limitations attributable to BPD, which the ALJ failed to identify as a severe impairment), and this detailed analysis was simply not performed.[13]

In light of the foregoing, and, in short, because the ALJ in this case did not give full consideration to the consequences of Allen's mental impairments at steps three and five of the sequential evaluation process, his error at step two was harmful (not

---

[13] Again, the ALJ's decision is devoid of reference to the vast majority of the mental health evidence of record. The ALJ's decision in this case bears no relation to the ALJ's decision reviewed in *Hartman v. Commissioner of Social Security,* 2016 WL 1068485 (M.D. Fla. Mar. 18, 2016), a decision which "considered Plaintiff's alleged mental impairments in a single-spaced analysis spanning five pages of the decision," thereby "evincing that the ALJ considered Plaintiff's condition as a whole in determining Plaintiff's ability to work." *Id.* at *6.

harmless) and is cause for reversal and remand for further consideration not inconsistent with this decision.[14]

### **CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 23rd day of August, 2018.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**

---

[14] Remand will provide the ALJ with the opportunity to do more than parrot the contents of Social Security Ruling 02-01p (*see* Tr. 50-51) and actually analyze, for instance, whether Allen's morbid obesity causes any of her severe impairments to meet or equal a listed impairment (*compare id. with* Tr. 45 (ALJ's three-sentence analysis of various listings without any mention of Allen's morbid obesity)).